UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MERHAY GHEZAI TEWELDE, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | SA-26-CV-1044-FB (HJB) |
| | § | |
| | § | |
| TODD BLANCHE,[1] Acting United States | § | |
| Attorney General; MARKWAYNE | § | |
| MULLIN,[2] Secretary of Homeland Security; | § | |
| SYLVESTER ORTEGA, Field Officer | § | |
| Director for Detention and Removal, U.S. | § | |
| Immigration and Customs Enforcement; and | § | |
| WARDEN OF THE SOUTH TEXAS | § | |
| DETENTION CENTER, | § | |
| | § | |
| Respondents. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Petitioner Merhay Ghezai Tewelde's Petition

for Habeas Corpus (Docket Entry 1), which was referred to the undersigned pursuant to 28 U.S.C.

---

[1] Todd Blanche was appointed acting Attorney General on April 2, 2026. Blanche is therefore substituted for former Attorney General Pamela Bondi as the proper, named Respondent. *See* FED. R. CIV. P. 25(d) ("An action does not abate when a public officer . . . ceases to hold office while the action is pending[;] [t]he officer's successor is automatically substituted as a party [and] [l]ater proceedings should be in the substituted party's name.").

[2] Markwayne Mullin was sworn in on March 24, 2026, as Secretary of Homeland Security. Mullin is therefore substituted for former Secretary of Homeland Security Kristi Noem as the proper, named Respondent. *See* FED. R. CIV. P. 25(d) ("An action does not abate when a public officer . . . ceases to hold office while the action is pending[;] [t]he officer's successor is automatically substituted as a party [and] [l]ater proceedings should be in the substituted party's name.").

§ 636(b)(1) (*see* Docket Entry 9). For the reasons set out below, I recommend that the petition (Docket Entry 1) be **GRANTED**, and that Petitioner be released from Respondents' custody.

## I. Jurisdiction.

The Court has jurisdiction pursuant to 28 U.S.C. § 2241. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear . . . . challenges to the lawfulness of . . . . continued custody after a deportation order ha[s] become final.") (emphasis omitted). The undersigned has jurisdiction to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b).

## II. Background.

The facts in this case are largely undisputed. Petitioner is a citizen of Eritrea who lawfully entered the United States in 2004. (Docket Entry 1, at 2; Docket Entry 6, at 1.) On February 12, 2007, he was convicted of online solicitation of minor in violation of Texas Penal Code § 33.021. (Docket Entry 6-1, at 2.) On the basis of that conviction, an Immigration Judge found, on May 7, 2008, that Petitioner was removable for having been convicted of what was both an aggravated felony and a crime of moral turpitude. (*Id.*) On July 23, 2008, the Immigration Judge denied Petitioner's requests for asylum and withholding of removal, and ordered that Petitioner be removed to Eritrea. (*Id.*) Petitioner did not appeal the removal order to the Board of Immigration Appeals ("BIA"). (Docket Entry 1, at 2.)

Pursuant to the Immigration Judge's order of removal, Respondents began making efforts to secure Petitioner's removal to Eritrea. (Docket Entry 6-1, at 3.) Petitioner initially refused to cooperate in those efforts. (*Id.*) On November 4, 2008, Respondents asked him "to fill out a travel document request application," but he refused. (*Id.*) He similarly refused to sign additional documentation on December 23, 2008. (*Id.*) But on March 2, 2009, Petitioner finally

yielded and advised that he "was ready to comply with obtaining a travel document."  (*Id.*)  After failing to secure Petitioner's removal to Eritrea even with his assistance, Respondents released Petitioner on June 18, 2009, under an Order of Supervision ("OSUP").  (*Id.* at 2.)  His release was subject to various conditions, including that he commit no crimes, register as a sex offender, submit to GPS monitoring, attend routine check-ins, and provide proof of ongoing efforts to secure travel documents from Eritrea.  (*Id.* at 3–4.)

Petitioner remained out of custody for more than a decade.  On October 5, 2020, Petitioner was taken back into custody from the Medina County Jail, after he was arrested for driving while intoxicated (a violation of his OSUP conditions).  (Docket Entry 6-1, at 4.)  Respondents nevertheless re-released him under his OSUP conditions, as there was "no significant likelihood of [his] removal in the reasonably foreseeable future."  (*Id.*)

More than five years later, on December 19, 2025, Respondents revoked Petitioner's OSUP and re-detained him "pending his removal to Eritrea."  (*Id.*)  The asserted basis for the OSUP revocation and re-detention was "changed circumstances"—namely, that Respondents had now "determined that [Petitioner] c[ould] be expeditiously removed from the United States," because they were simply awaiting "the issuance of a travel document" from Eritrea.  (Docket Entry 16, at 1.)

On February 20, 2026, Respondents asked Petitioner to complete travel document information, which he refused at the request of his attorney.  (Docket Entry 6-1, at 5.)  According to Respondents, however, Petitioner began to cooperate again as of March 5, 2026.  (*Id.*)

Petitioner filed the instant petition on February 18, 2026.  (Docket Entry 1.)  He argues that his continued detention violates 8 U.S.C. § 1231—based on the Supreme Court's decision in *Zadvydas*, 533 U.S. 678—because "there is no significant likelihood of removal in the reasonably

3

foreseeable future." (Docket Entry 1, at 11.)[3] Respondents have filed a response (Docket Entry 6), and Petitioner has replied (Docket Entry 8).

### III.    Applicable Law.

The statutory limits on detention following a final order of removal are well-settled. Title 8 U.S.C. § 1231 governs detention following a final order of removal. *Demore v. Kim*, 538 U.S. 510, 527 (2003). "Once an alien is ordered removed, DHS must physically remove him from the United States within a 90-day 'removal period.'" *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. 1231(a)(1)(A)). During the 90-day removal period, detention is mandatory. *Id.* (citing 8 U.S.C. § 1231(a)(2)). Upon expiration of the 90-day period, the Government may either continue to detain the alien or release him under conditions of supervision. *Abuelhawa v. Noem*, No. 4:25-CV-04128, 2025 WL 2937692, at *4 (S.D. Tex. Oct. 16, 2025) (citing 8 U.S.C. § 1231). "Although the statute does not specify a time limit on how long DHS may detain an alien in the post-removal period," *see Guzman Chavez*, 594 U.S. at 529, the Supreme Court has held that post-removal-period detentions may not last longer than what is "reasonably necessary to bring about the alien's removal," *see Zadvydas*, 533 U.S. at 689.

Recognizing that not all reasonably foreseeable removals can be accomplished within the 90-day removal period, the Supreme Court has held that detention for an additional 90 days—for a total of "six months"—is "presumptively reasonable." *Zadvydas*, 533 U.S. at 701; *see Mogos v. Thompson*, No. 5:26-CV-740-JKP, 2026 WL 475079, at *3 (W.D. Tex. Feb. 13, 2026) ("Th[e] six-month period includes the 90-day removal period."). Beyond that, release is required if "there is no significant likelihood of removal in the reasonably foreseeable future." *Guzman Chavez*, 594 U.S. at 529 (citation omitted).

---

[3] Petitioner also asserts constitutional grounds for relief. (Docket Entry 1, at 12–13.)

As this case involves a re-detention following the revocation of an OSUP—"not your typical first round detainment of an alien awaiting removal"—the burden is on Respondents to show that Petitioner's removal is significantly likely in the reasonably foreseeable future.  *See Garcia-Aleman v. Thompson*, No. SA-25-CV-886-OLG (HJB), 2025 WL 3534806, at *3 (W.D. Tex. Nov. 24, 2025) (quoting *Escalante v. Noem*, No. 9:25-CV-182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025)), *report and recommendation adopted*, No. SA-25-CV-886-OLG, 2025 WL 3532179 (W.D. Tex. Dec. 9, 2025).   And the length of a petitioner's detention and the length of time qualifying as the "reasonably foreseeable" future are inversely related.   In other words, "as the period of prior post-removal-period confinement grows, the amount of time considered the 'reasonably foreseeable future' shrinks."   *Abdulle v. Gonzales*, 422 F. Supp. 2d 774, 778 (W.D. Tex. 2006); *see Misirbekov v. Venegas*, 796 F. Supp. 3d 436, 439 (S.D. Tex. 2025) (same).

## IV.    Discussion.

Respondents make two arguments against Petitioner's *Zadvydas* claim.   First, they argue that the claim is not ripe for review, as Petitioner has been in post-removal-order detention only since December 19, 2025, such that his detention remains presumptively reasonable through June 19, 2026.   (Docket Entry 6, at 1–2.)   Respondents are mistaken.   Because "the *Zadvydas* period is cumulative," *Abuelhawa*, 2025 WL 2937692, at *4, Petitioner's months of previous removal-period detention must be considered in assessing the ripeness of his *Zadvydas* claim.

Petitioner's removal period began on August 3, 2008, when his removal order became administratively final.   That it became administratively final on that date is clear from the facts that: (1) Petitioner was ordered removed on July 23, 2008, (Docket Entry 6-1, at 3); (2) he did not appeal that decision to the BIA, (Docket Entry 1, at 2); and (3) his deadline to do so was "within 10 calendar days" of the decision, 8 C.F.R. § 1003.38.   *See Riley v. Bondi*, 606 U.S. 259, 267

5

(2025) (explaining that a removal order becomes administrative final at "the expiration of the period in which the alien is permitted to petition the BIA for review of the order").   Normally, his 90-day detention period would have begun to run as to any immigration custody after that date; Petitioner's clock did not begin to run, however, until March 2, 2009, when he first began cooperating with Respondents' efforts to secure travel documents to effect his removal.   (Docket Entry 6-1, at 3.)   *See, e.g.,* 8 U.S.C. § 1231(a)(1)(C) ("The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal"); *Balogun v. I.N.S.*, 9 F.3d 347, 351 (5th Cir. 1993) ("The six-month period is tolled if the alien 'hampers' his deportation.").

Petitioner was then released under an OSUP on June 18, 2009—three months and 17 days after he first began cooperating with Respondents while in their custody.   (Docket Entry 6-1, at 2.)   That OSUP was revoked, and Petitioner was re-detained, on December 19, 2025.   (*Id.* at 4.) While Respondents contend that Petitioner refused their request to provide some unspecified travel document information on February 20, 2026, they represent that, "[a]s of March 5, 2026," the lack of cooperation was no longer an obstacle to Petitioner's removal and that they were simply awaiting the receipt of travel documents from Eritrea.   (*Id.* at 5.)   Accordingly, his post-revocation detention—without crediting the period of non-cooperation—has lasted three months and 3 days.   And because the *Zadvydas* period is cumulative, *Abuelhawa*, 2025 WL 2937692, at *4, Petitioner's credited time in post-removal-order custody has lasted more than six months, and thus is no longer presumptively reasonable.   Accordingly, Respondents ripeness argument fails.[4]

_____

[4] The undersigned notes that, even if Petitioner had been detained for less than six months,

6

Respondents next argue that the "revocation of Petitioner's release and [his] resulting detention" remain justified "because of the change in circumstances relating to the ability to remove him from the United States via third country removal efforts." (Docket Entry 6, at 10.) They argue that "ICE is working to remove Petitioner to Eritrea," (*id.*), such that "there is a significant likelihood of removal in the reasonably foreseeable future," (Docket Entry 6-1, at 5). In support of this argument, Respondents note their pending request for travel documents from Eritrea.

Respondents' "burden to furnish evidence demonstrating that removal is likely in the reasonably foreseeable future is not met by a pending request for travel documents, alone." *Trejo v. Warden of ERO El Paso E. Montana*, 807 F. Supp. 3d 697, 706 (W.D. Tex. 2025); *see Medellin Martinez v. Bondi*, No. SA:25-CV-1319-OLG, at 21 (W.D. Tex. Nov. 21, 2025) (same). The mere "potential for a travel document at some point in the future is not sufficient to justify further detention." *Fermine v. Dir. of Immigr. & Customs Enf't*, No. 2:06-CV-1578, 2007 WL 2284606, at *4 (W.D. La. May 23, 2007) (internal marks omitted). As Respondents present no other evidence to show a significant likelihood of removal in the reasonably foreseeable future, they have not met their burden of demonstrating that Petitioner's detention is proper under § 1231 and the rule established in *Zadvydas*.[5]

---

his *Zadvydas* claim would not necessarily be foreclosed. "Nothing in *Zadvydas* precludes a challenge to detention before the presumptive period has elapsed." *Garcia-Aleman*, 2025 WL 3534806, at *4 (citation modified); *see Puertas-Mendoza v. Bondi*, No. SA-25-CV-890-XR, 2025 WL 3142089, at *2 (W.D. Tex. Oct. 22, 2025) ("*Zadvydas* recognized a presumptively—not categorically—reasonable period of detention."). But given that Petitioner's cumulative detention exceeds six months, the Court need not address this issue.

[5] Although Petitioner also asserts constitutional grounds for relief, *see supra* n. 2, the Court need not address these issues as he is entitled to relief on his statutory claim.

## V.    Conclusion and Recommendation.

Based on the foregoing, I recommend that Petitioner's Merhay Ghezai Tewelde's Petition for Writ of Habeas Corpus (Docket Entry 1) be **GRANTED**, and that Petitioner be ordered **RELEASED WITHIN 48 HOURS** of the Court's order, "under conditions substantially similar to those contained in his prior OSUP." *Medellin Martinez,* SA:25-CV-1319-OLG, at 21.

## VI.    Notice of Right to Object.

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.    While written objections to a Report and Recommendation are typically due within 14 days of a party's receipt of the same, that deadline can be modified by the Court.    28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).    At a hearing on March 18, 2026, the parties requested that the period for objecting to this Report and Recommendation be reduced from 14 to seven days.    In light of that request, and the deprivation of liberty at issue in this habeas case, the parties must file any written objections **within seven (7) days** of their receipt of this Report and Recommendation.

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties.    An objecting party must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; objections that are frivolous, conclusory, or general in nature may be disregarded.    *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo*

8

review by the District Court.    *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).    Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the district court.    *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on April 10, 2026.

Henry J. Bemporad
United States Magistrate Judge